UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KAREN WEED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:18-CV-001192-SPM |
| | ) |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Andrew M. Saul, the Acting Commissioner of Social Security, denying the application of Plaintiff Karen Weed ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). For the reasons set forth below, the decision of the Commissioner will be reversed and the case remanded for further proceedings consistent with this Memorandum and Order.

## I. BACKGROUND

On June 1, 2015, Plaintiff applied for DIB and SSI, alleging that she has been unable to

---

[1] After this case was filed, Andrew M. Saul ("Saul") was confirmed as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

work since April 28, 2015. (Tr. 151). Her application was initially denied on August 24, 2015. (Tr. 109). Following a hearing by an Administrative Law Judge ("ALJ"), the ALJ found Plaintiff was not under a "disability" as defined in the Act. (Tr. 10). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council, and on May 22, 2018, the Appeals Council declined to review the case. (Tr. 1). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

With regard to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties in their respective statements of facts and responses. The Court will address specific facts related to the issues raised by Plaintiff as needed in the discussion below.

## II. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make

an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, April 28, 2015; that Plaintiff has the severe impairments of fibromyalgia, obesity, migraine, osteoarthritis of the left knee, and carpal tunnel syndrome; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404[2], Subpart P, Appendix 1. (Tr. 16-18). The ALJ found that Plaintiff has the RFC to perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a), except that she can frequently finger and handle; can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; can never climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to loud noise and hazards such as dangerous machinery and unprotected heights. (Tr. 19). The ALJ found that Plaintiff is unable to perform any of her past relevant work.[3] (Tr. 25). However, relying on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff would be able to perform the

---

[2] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. § 404.1527, the Court will use the regulations in effect at the time that this claim was filed.
[3] Plaintiff's past relevant work included home attendant and nurse assistant.

4

occupations of order clerk, food and beverage (Dictionary of Occupational Titles ("DOT") No. 209.567-014, 208,000 jobs in the national economy), and charge account clerk (DOT No. 205.367-014, 396,000 jobs in the national economy). (Tr. 26). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from April 28, 2015, through the date of her decision. *Id*.

IV. DISCUSSION

Plaintiff challenges the ALJ's decision, arguing that the ALJ erred by failing to formulate an RFC supported by substantial evidence (1) because she did not properly consider or discuss Plaintiff's sleep apnea; and, (2) because she did not include all the limitations from the consultative examiner's opinion into the RFC, and did not explain the discrepancy. The Commissioner argues that the ALJ did not err by failing to find Plaintiff's sleep apnea to be "severe," because Plaintiff failed to allege that her sleep apnea limited her ability to perform basic work activities. The Commissioner also argues that the ALJ properly considered and explained the weight given to the opinion evidence, and there was substantial evidence in the record to support the RFC.

A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and

5

evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. Sleep Apnea Not Severe

Plaintiff argues that the ALJ erred at Step Two by failing to find that Plaintiff's sleep apnea was a medically determinable and severe impairment. (Doc. 14 at 6).

In the commissioner's five-step sequential evaluation used to determine whether a claimant is disabled, at Step Two the ALJ must determine whether the claimant has a "severe" impairment that lasted or is expected to last for at least twelve months. *See* 20 C.F.R. §§ 404.1509, 416.909. To show that an impairment is severe, a claimant must show that she has (1) a medically determinable impairment or combination of impairments, which (2) significantly limits her physical or mental ability to perform basic work activities, without regard to age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 404.1521(a), 416.920(a)(4)(ii), (c); 416.921(a). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Basic work activities are the abilities and aptitudes necessary to do most jobs, and include, among other things, the capacity for understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to

6

supervision, co-workers, and unusual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b), 416.922. Although the requirement of severity is not an "onerous requirement," it is "not a toothless standard." *Kirby*, 500 F.3d at 707. It is Plaintiff's burden to prove the existence of severe impairments. *Id*.

Here, Plaintiff never made the ALJ aware that her sleep apnea contributed to her disability claim. She failed to allege sleep apnea in her application for benefits. (Tr. 192). *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) ("The fact that she did not allege depression in her application for disability benefits is significant, even if the evidence of depression was later developed."). Rather, in her application for benefits, Plaintiff listed the impairments that limited her ability to work as being overweight, fibromyalgia, migraines, hand and arm numbness, depression, and anger issues. (Tr. 192). She likewise failed to mention sleep apnea or fatigue in her function report when asked what conditions limit her ability to work, though she did discuss in detail her pain, fibromyalgia, weight, cellulitis, and hand and arm numbness. (Tr. 217). At her hearing, when explicitly asked by the ALJ what impairments kept her from working, Plaintiff mentioned her pain, fibromyalgia, obesity, skin break outs, and carpal tunnel syndrome, and did not discuss sleep apnea. (Tr. 48, 62-63). Plaintiff did not mention sleep apnea at all until the ALJ asked about it, at which time Plaintiff indicated that she no longer used a CPAP machine. (Tr. 51). This omission, combined with her failure to proffer evidence proving that her sleep apnea is a severe impairment is significant. The ALJ is not obligated "to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)); see also 20 C.F.R. § 404.1512(a) ("We will consider only impairment(s) you say you have . . ."). Therefore, Plaintiff's failure to even allege sleep apnea as a severe impairment, or

7

offer proof of the same, is a significant factor supporting the ALJ's decision.

Although Plaintiff now alleges that her sleep apnea could result in unrefreshed sleep and daytime drowsiness, she does not present any medical evidence that she actually experienced those symptoms. (Doc. 14 at 8-9). Additionally, there is little evidence that her sleep apnea limited her ability to do basic work activities. Plaintiff's treatment notes contain very little detail regarding the effects of Plaintiff's sleep apnea. Additionally, Plaintiff reported to consultative examiner Dr. Joseph Starke that she felt "well rested in the morning." (Tr. 486). Thus, the undersigned finds that the ALJ's decision not to include Plaintiff's sleep apnea among her severe impairments at Step Two was supported by substantial evidence.

Moreover, to the extent that the ALJ erred at Step Two with respect to Plaintiff's sleep apnea, the undersigned finds that error was harmless in this case. Courts frequently find that an ALJ's error at Step Two in failing to find a particular impairment severe does not require reversal where the ALJ considers all of a claimant's impairments, severe and non-severe, in his or her subsequent analysis. *See Spainhour v. Astrue*, No. 11-1056-SSA-CV-W-MJW, 2012 WL 5362232, at *3 (W.D. Mo. Oct. 30, 2012) ("[E]ven if the ALJ erred in not finding plaintiff's shoulder injury and depression to be severe impairments at step 2, such error was harmless because the ALJ clearly considered all of plaintiff's limitations severe and nonsevere in determining plaintiff's RFC."); *Givans v. Astrue*, No. 4:10-CV-417-CDP, 2012 WL 1060123, at *17 (E.D. Mo. March 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's mental impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining Plaintiff's RFC). *See also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of

which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Here, Plaintiff claims that the ALJ must have ignored the symptoms related to her sleep apnea, because she did not find it be medically determinable or severe. However, Plaintiff also stated that her sleep apnea symptoms were the same as some of the symptoms related to her fibromyalgia, which the ALJ clearly did consider in her RFC finding. (Tr. 19-24). Therefore, the undersigned finds that, to the extent that the ALJ erred in failing to find Plaintiff's sleep apnea a severe impairment, the error was harmless because the ALJ proceeded with the analysis and considered all of Plaintiff's symptoms, including those associated with sleep apnea, which overlapped entirely with her symptoms flowing from fibromyalgia. *See Givans*, 2012 WL 1060123, at *17.

### C. The Opinion of Consultative Examiner Joseph Starke

Plaintiff argues that the ALJ reached a flawed RFC assessment because the ALJ failed to explain why the opinion of consultative examiner Joseph Starke, D.O., ("Dr. Starke") was not adopted in full. (Doc. 14 at 3). A claimant's RFC is "the most a claimant can do despite her limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Ultimately, the determination of a plaintiff's RFC is a medical question. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).

On February 4, 2017, at the request of the ALJ, Dr. Starke examined Plaintiff. Dr. Starke noted tenderness in all classic fibromyalgia tender points, as well as decreased range of motion in most major joints, including her shoulders. (Tr. 489-90). Dr. Starke opined that, due to her impairments, Plaintiff could never reach overhead, and could only occasionally to frequently reach in any other direction, and that she could perform less than the full range of light work. (Tr. 482).

In her decision, the ALJ summarized Dr. Starke's opinion, and explained that she was according it only "some weight," because she found Plaintiff to be *more* limited than did Dr. Starke, in that the ALJ determined that Plaintiff should be restricted to sedentary work, as she found the "sedentary exertional level is more consistent with the claimant's body mass index (BMI) which was noted to be over sixty." (Tr. 24) (emphasis added).

The ALJ then made the following findings regarding Plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to loud noise and hazards such as dangerous machinery and unprotected heights. The claimant is able to finger and handle on a frequent basis.

(Tr. 19). In the RFC assessment, the ALJ incorporated several of the other limitations in Dr. Starke's opinion, but she did not include any limitations on reaching. The ALJ did not explain in her decision why she discounted the reaching limitation in Dr. Starke's opinion, and in fact, indicated that she found Dr. Starke's opinion to be grounded in the evidence of record, stating that Dr. Starke's opinion is "somewhat consistent with his examination where the claimant had a decreased range of motion in most of her joints." (Tr. 24).

Plaintiff argues that remand is required because the ALJ erred by affording the opinion of Dr. Starke "some weight" but then failing to explain why she did not adopt the limitations in the

10

opinion in full when determining her RFC. (Doc. 14 at 3). Plaintiff alleges that when an RFC conflicts with the opinion of a medical source, the ALJ must explain why the opinion was not adopted, and that the ALJ failed to adequately do so here, citing Social Security Ruling 96-8p, 1996 WL 374184, at *7 (July 2, 1996), which states that "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted."

When determining the RFC, "[t]he opinion of a consulting physician who examines a claimant once . . . does not generally constitute substantial evidence." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (internal quotations omitted). However, this Court has previously held that where an ALJ does assign weight to a consultative physician's opinion, or otherwise finds it persuasive, he must give an explanation if he then disregards the opinion in formulating a plaintiff's RFC. *Reynolds v. Astrue*, No. 1:06 CV 64 CDP DDN, 2007 WL 5100461, at *3 (E.D. Mo. Aug. 7, 2007). In *Reynolds*, a non-examining consultative physician opined that the plaintiff had mental limitations of depression and anxiety. The ALJ stated that he found the non-examining consultative physician's opinion "well rationalized," and did not explain whether or in what respects he found it not credible. When the ALJ chose not to adopt the physician's opinions regarding the claimant's limitations, the Court reversed and remanded, explaining that "[w]hile the ALJ is not required to give great weight to a consulting physician's opinion, here, the ALJ stated that he found [the] opinion 'well rationalized,' and did not explain why he found it not credible." *Reynolds*, 2007 WL 5100461 at *4; *see also*, *Murphy v. Colvin*, No. 1:15-CV-00131-AGF, 2016 WL 4158868, at *7 (E.D. Mo. Aug. 5, 2016) (remanding where the ALJ stated that he "accepted" the opinion of a consulting physician because it was "grounded in the evidence of record," yet did not give any reason for disregarding parts of that opinion; noting that the ALJ's error could not be overlooked given that there appeared to be ample evidence in the record to support the physician's opinion);

*Crews-Cline v. Colvin*, No. 4:13-CV-00732-NKL, 2014 WL 2828894, at *2 (W.D. Mo. June 23, 2014) (remanding where the ALJ gave "great weight" to the opinion of a consultative examiner but then "offer[ed] no explanation as to why only certain limitations are incorporated in the RFC while others are not"). The Eighth Circuit has similarly held that while the opinion of a non-examining consultative physician may be disregarded, the ALJ must at least explain the decision to disregard such an opinion. *See McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) ("Our primary difficulty is not with the possibility that the ALJ discounted [the consultative physician's] opinion, as an ALJ is free to discount a physician's report if the record warrants this . . . [t]he problem with the ALJ's opinion is that it is unclear whether the ALJ did discount [the] opinion, and, if it did so, why.").

Here, as in the above cases, the ALJ accorded some weight to Dr. Starke's opinion, yet did not offer any reason for not including in the RFC assessment the reaching limitation in that opinion. Moreover, as in the above cases, it is not apparent why she did not include that limitation, in light of evidence in the record that appears to support it. As noted above, Dr. Starke's opinion regarding Plaintiff's reaching abilities was supported by Dr. Starke's own objective observation that Plaintiff had a decreased range of motion in most of her joints, including limited flexion and abduction of the bilateral shoulders. (Tr. 489-90). Dr. Starke's examination also found Plaintiff to have fibromyalgia point tenderness and pain. (Tr. 489). Moreover, in addition to Dr. Starke's examination results, other evidence of record provides support for Dr. Starke's opinion. As early as April 2013, Plaintiff reported diffuse tenderness and regional pain in her neck and shoulders. (Tr. 291). Plaintiff received treatment for fibromyalgia throughout the next several years, and consistently reported increasing neck and shoulder pain, as well as numbness to her arms and hands. (Tr. 272, 324, 405). Additionally, on her Function Report, Plaintiff indicated that her ability

to reach was hindered by her conditions, (Tr. 222), and she testified that her fibromyalgia caused constant pain in her arms, shoulders, and neck. Furthermore, the evidence of Plaintiff's reaching limitations is relevant, and the failure to include it in her RFC is not harmless; according to the DOT, and its companion publication, the Selected Characteristics of Occupations ("SCO"), both jobs that the ALJ concluded Plaintiff could perform despite her limitations require the ability to frequently reach in all directions, including overhead.

In light of the facts described above, it is unclear why the ALJ did not include a limitation to occasional reaching in the RFC, and thus, the Court cannot say that substantial evidence supports the RFC assessment in this case. On remand, the ALJ should either formulate an RFC consistent with Dr. Starke's opinion regarding Plaintiff's reaching limitations, or should explain why she is not including such a limitation in the RFC.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of September, 2019.